## Smith *et al. versus* McCarthy *et al.*

| 56 | 359 |
|----|-----|
| 166 | 77 |

| 56 | 359 |
|----|-----|
| c209 | ¹332 |
| j24 SC | ¹652 |

1. An Act of Assembly provided for the consolidation of the city of Pittsburg and surrounding territory into one city; to be submitted to a vote of the citizens in three designated districts, and if either district decided in favor of consolidation an election was to be held for municipal officers, but if either district should " reject consolidation," such district should have no representation. *Held*, that the submission of the question to a vote was not unconstitutional.

2. If the act be unconstitutional, private parties cannot interfere by bill to have it so declared unless on account of some damage to them. Injury to the public peace or interests of the territory to be incorporated is not sufficient.

3. The principle forbidding the delegation of legislative power applies to making laws.

4. The legislature had the power to pass an act for consolidation; they have power to divide and change the boundaries of municipal corporations without or with a vote of the people.

5. One district only decided in favor of consolidation. *Held*, that the act went into effect in that district.

6. That portions of an act are unconstitutional does not render the whole so.

7. A wrong resulting from an election must be tried before the proper tribunals, or by testing the right of the officers elected by quo warranto; the court will not interfere by injunction.

8. The power to authorize courts to forbid municipal elections when ordered by the legislature, should be plain.

November 18th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Bill in equity in the Supreme Court, Western District: No. 55, to October and November Term, by William H. Smith and others, citizens of the city of Pittsburg, the borough of Lawrenceville and of the townships of Pitt, Oakland, Collins, Liberty and Peebles, against William C. McCarthy, mayor of Pittsburg and others, election officers within the city, borough and townships above mentioned.

The bill states that the defendants claim that, the said city, bo-

[Smith *v.* McCarthy.]

rough and townships having been consolidated into one municipal corporation under the name of the City of Pittsburg, by virtue of an Act of Assembly passed April 6th 1867, entitled A further supplement to the acts incorporating the city of Pittsburg, the defendants intend to hold an election for municipal officers in the several districts of the new city on the second Tuesday of December next, and to exercise municipal jurisdiction over the whole territory aforesaid ; that the act, in the opinion of the complainants, is void and unconstitutional; and " if the said defendants be allowed to proceed with the said election, there is great danger that the municipal affairs of the city of Pittsburg and the said borough and townships will be thrown into most disastrous confusion, to the great injury of the public peace, and of the interests of all the citizens within the said territory."

The bill prayed that :—

1. The said Act of Assembly be declared to be void and unconstitutional; and the said defendants, and all other election officers, be for ever enjoined from holding the said election, or any other, under the said Act of Assembly.

2. That a preliminary injunction issue to stay all proceedings, &c.

The Act of Assembly (Pamph. L. 846), by the 1st section, prescribes certain boundaries for the city of Pittsburg ; the 2d section provides for the citizens within the territory voting at the next general election on the question of consolidation, and for that purpose divides the territory within the boundaries specified into three districts, the first district comprising the territory in which the complainants reside ; and directs that the votes in the respective districts shall be separately counted.   The 3d section enacts :—

" 3. In case a majority of the qualified electors in either of the districts named in this section of the act shall, at the said October election, decide in favor of consolidation, then a new election shall be held on the second Tuesday of December next, at the usual places, and by the usual officers appointed to hold elections, for the election of members of the city councils, for mayor and such other city officers as are in this act named, in the manner following, to wit (apportioning the officers to the several wards, &c.) Provided, however, that if either of the three general districts should reject consolidation, then no representation shall be allowed in said select and common councils to any of its constituent parts."

The further sections of the act provide for the powers of the city, the mode of their exercise and other matters not involved in the question decided by the court.

The first district was the only one in which a majority of the electors voted for consolidation.

*J. Veech* and *W. H. Lowrie*, for complainants.

*G. Shiras, Jr.*, and *J. F. Slagle*, for defendants.

The opinion of the court was delivered, November 21st 1867, by

THOMPSON, J.—We are asked to enjoin the defendants from holding an election for members of the councils, mayor and other city officers for the city of Pittsburg, on the second Tuesday of December next, which it is charged they threaten to hold under the provisions of an Act of Assembly passed the 6th day of April, A. D. 1867, entitled "A further supplement to the acts incorporating the city of Pittsburg," Pamph. L. 1867, p. 846.

The act provides for incorporating into the city of Pittsburg certain territory therein described, outside the limits of the city at the time of the passage of the act, leaving the question of consolidation to the people in the districts intended or designed to be consolidated. At the general election in October last, and pursuant to the provisions of the act, a vote by the qualified voters of the several districts was had, and the central district alone gave a majority for consolidation, the other two against it. By the 2d section of the act, only those sections which should cast a majority of votes for consolidation were to constitute the city. It is plain that as the central district alone voted for consolidation, it alone will be entitled to elect the mayor and other officers named in the act, and the other districts will have no part in the matter.

The bill filed by the complainants charges that the act in question is unconstitutional, and no election can or ought to be held under it. We are not able from anything that has been shown to say that this is so, so far at least as the provisions for consolidation are concerned. It is not unconstitutional to submit such a question to the people. We do not regard it within the principle which forbids the delegation of legislative power. That is applicable to the creation of laws, which the law-making power provided by the Constitution must not delegate. So far as questions like the present are concerned, the Constitution itself furnishes a precedent in the division of counties; so do the Acts of Assembly in regard to the division or establishment of new townships created out of old. In these cases the vote of the districts interested is taken to indicate the choice of the people on the subject. We need not discuss this, however, for it was not insisted on in the argument by the plaintiffs' counsel. It would have been in vain if it had been. Wherein, otherwise, the act is unconstitutional so far as it provides for consolidation we do not see, and have not been shown. The legislature had the undoubted power to pass an act for consolidation; it may unquestionably enlarge, divide and change the boundaries of municipal corporations, and may do this without referring the question of choice to a vote of the people.

[Smith *v.* McCarthy.]

The instance of the consolidation of a number of independent out-
lying districts with the city of Philadelphia, by the Act of 1854,
is but one of the numerous instances of the exercise of the power
in this state ; others need not be cited.    Of the same character
has been the exercise of the power to change county sites and
county lines.    The legislature, as said, might have proceeded as
it did in regard to the city of Philadelphia, consolidating the whole
territory in question without submitting it to a vote of the people.
But it did not do so.    And we think no breach of the Constitution
was involved in the method adopted.

The only question, therefore, now is, did the central district, in
which the election is proposed to be holden, and which is sought
to be prevented by this bill, agree by its votes to the plan of con-
solidation ?    This is conclusively shown by reference to the vote,
which was largely in the affirmative.    What is there, therefore, to
prevent an election at the time specified in the act, in the consoli-
dated city ? We know of no reason, and none has been shown.    That
portions of the Act of Assembly in question may contain unconsti-
tutional provisions, may be true, and they may be so declared when
they come to be applied ; but, that this may be so, does not render
the entire act unconstitutional.    It would not render nugatory the
provisions applicable to consolidation.    If that objection cannot
be made good as to that portion of the act, no appeal to this court
to interfere, supposing we had the power, would avail on grounds
not involved in consolidation, the question immediately connected
with the question before us.

It strikes me as somewhat novel to ask the interference of the
court to prevent, what we are accustomed to regard as only triable
in some of the modes provided for trying the result of an election
by the people, viz., either by contesting the election before the
proper tribunals, or testing the right of the officers elected by quo
warranto.

We think this, being the remedy the law provides, must be
regarded as the true remedy to redress wrongs resulting from an
undue election.    The power ought to be plain, indeed, to authorize
courts to forbid municipal elections when ordered by the legis-
lature.    It is not plain, nor do we think it exists.    Whatever
may be the right to interfere to restrain incorporated companies,
it has not been shown to exist, or to have ever been exercised, in
a case like the present.

We are not able to see the grounds on which the complainants
ask an interference, even supposing we could act in the premises.
They allege no private or individual injury, or " irreparable mis-
chief," impending.    Even supposing the act to be as alleged, un-
constitutional, private parties cannot interfere by bill to ask it to
be so declared, unless on account of some special damage or injury
to them in person or property.    They do not pretend this.    With-

[Smith v. McCarthy.]

out this they have no equity. Injury to the public peace or interests of the territory to be incorporated, is not sufficient.

Indeed, an attempt to prevent an election by injunction against the election officers, would amount to nothing—it would be *brutum fulmen.* If for any reason, on account of an injunction, or otherwise, the election officers failed to attend the place appointed for the election, the electors would supply their places, and thus would the election legally proceed in despite of the abortive attempt to prevent it. On the whole, we are satisfied that we cannot interfere, and the application for a preliminary injunction is refused.