White *v.* Philadelphia, Appellant.

Argued January 4, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Edward B. Soken,* for School District of Philadelphia, appellant.

*Matthew W. Bullock, Jr.,* Assistant City Solicitor, with him *Joseph V. Furlong, Jr.* and *James L. Stern,*

Deputy City Solicitors, and *David Berger,* City Solicitor, for City of Philadelphia, appellant.

*George E. Peterson,* for Philadelphia Housing Authority, appellant.

*Seymour Kurland* and *Bernard M. Borish,* for appellant, Philadelphia Housing Authority, and Philadelphia Housing Association, amicus curiae.

*Merton J. Matz,* with him *Thomas S. Howland, Morris B. Levitt,* and *Simon Lenson,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 25, 1962:

In this equity action, Abraham White (White), an individual, and four Philadelphia Realty Boards (Boards) sought to enjoin the City of Philadelphia (City), the Philadelphia Housing Authority (Authority), and the School District of Philadelphia (School District) from the enforcement of an ordinance of the Council of the City of Philadelphia (Council), known as Ordinance No. 2530, and to have said ordinance declared invalid and unconstitutional.[1] After the dismissal of preliminary objections to the complaint and the filing of identical answers by the City, Authority and School District, the matter was heard before Judge LEO WEINROTT and argued before the court en banc of Court of Common Pleas No. 5 of Philadelphia County. That court unanimously enjoined the City, the Authority and the School District from proceeding under the ordinance holding that the ordinance was invalid and that the City had exceeded its powers under the enabling statute, the Housing Authorities Law.[2] The validity of that ruling is attacked on these three appeals.

---

[1] Philadelphia Housing Association was later permitted to intervene as amicus curiae.

[2] Act of May 28, 1937, P. L. 955, 35 P.S. §1541 et seq.

Over eleven years ago, the Authority received from the Public Housing Administration (PHA), a federal agency which administers the program of federal housing,[3] a program reservation for 10,000 units of low rent housing to be developed in the City. On June 19, 1950, the Authority entered into a so-called Cooperation Agreement with the City and School District to assist in providing low rent housing units. By January 14, 1958, the Authority had developed projects containing 10,000 units and the Cooperation Agreement was amended to provide an additional 10,000 units.

The Authority then decided to embark upon an *entirely new concept* of low rent housing, i.e., the acquisition of existing structures and buildings, not necessarily contiguous, for the purpose of rehabilitation of such structures and buildings and the conversion of such structures and buildings into low rent housing units. For that purpose, the Authority determined to utilize the so-called Haddington area which is comprised of 60 blocks, bounded on the east by 52nd Street, on the west by 63rd Street, on the south by Market Street and on the north by Girard Avenue, all in Philadelphia. To that end, the Authority on July 31, 1958 entered into a so-called Annual Contributions Contract with the PHA under which PHA was to contribute the necessary funds for the acquisition of 200 existing dwelling units in the Haddington area.

On October 7, 1958, City Council adopted Ordinance No. 2106A which amended a previous ordinance of May 10, 1950 which had authorized the execution of the Cooperation Agreement of June 1950. The important fea-

---

[3] The Authority receives its funds directly from the federal government under the provisions of the U. S. Housing Act of 1937. as amended (Act of September 1, 1937, c. 896, 50 Stat. 888 et seq.. 42 U.S.C.A. §1401 et seq.) and the federal government ultimately receives reimbursement through long term bonds issued by the Authority.

tures of Ordinance No. 2106A are: (a) its enlargement of the definition of "project" to include "The acquisition of existing structures and tracts of land, *not necessarily contiguous,* located in a general area, for re-use and development by the Authority" (emphasis supplied) and (b) its requirement that such acquisition should not be made until City Council had first approved the site and the maximum number of acquisitions to be made therein for re-use and development and until the Authority secured an appraisal of the property to be acquired and the approval of PHA of the purchase price.

On December 11, 1958, the Authority conducted a public hearing with respect to the selection of the Haddington area as the site and, after such public hearing, the Authority, by resolution, approved this area as the site for the project. On January 27, 1959, City Council passed Ordinance No. 2530 which approved the acquisition by the Authority of not more than 200 structures and tracts of land for re-use and development in the Haddington area.

In accordance with this approval, the Authority, *although possessed of the power of eminent domain,* decided only to *purchase* homes, offered voluntarily for sale, which needed rehabilitation and which were located in a block which would benefit by the rehabilitation. The record indicates that, under federal regulations, the Authority was required to purchase homes only in wholly residential districts and was not permitted to acquire any building or structure contiguous to a nonconforming use. Upon acquisition by the Authority, the structure would be rehabilitated and utilized as a low rent housing unit. The Authority had purchased and acquired forty homes in the area at the time this action was instituted.

Appellants contend: (1) that the Pennsylvania Housing Authorities Law of 1937, supra, permits the

Authority to purchase and rehabilitate existing houses, not necessarily contiguous, in a general defined area approved by City Council to provide low rent housing units for low-income families and (2) that White and the Boards have no standing to challenge the councilmanic action approving the project. Appellees contend that: (1) the councilmanic action is outside the scope of the Housing Authorities Law of 1937, supra; (2) that, if it is within the scope of such act, the act is unconstitutional as constituting (a) an improper delegation of legislative power and (b) a violation of due process of law; (3) that they do have a standing to challenge the councilmanic action.

White and the Boards seek a declaration by the court that Ordinance No. 2530 is invalid and unconstitutional. In their complaint neither White nor the Boards *aver any interest whatsoever* which gives them, individually or collectively, any standing to maintain this action. The record reveals: (a) that White, a 30 year resident of the Haddington area, is a general mechanic, a committeeman[4] for 18 years, and owns his home; (b) nothing whatsoever concerning the Boards except, by implication, that they are composed of realtors who engage in business in the area. White's stated, and apparently, sole, objection is that this housing project would bring objectionable persons into the neighborhood.[5]

This housing project will be financed solely by funds of the federal government and no city funds are involved. Thus, even though White is a taxpayer of the city and the Boards encompass in their membership such taxpayers such is of no avail. Likewise, the

---

[4] For whom or for what White is a committeeman the record does not disclose.

[5] White stated: ". . . not only my objection but this, the people's objection out there in that neighborhood—out there in general".

fact that White and the Boards' members pay taxes to the federal government vests in them no standing to attack this ordinance even though funds raised from such taxes finance the housing project: *Commonwealth of Massachusetts v. Mellon; Frothingham v. Mellon,* 262 U. S. 447, 43 S. Ct. 597.[6]

It is hornbook law that one who is not adversely or directly affected by a statute cannot attack the validity of its provisions: *Rich Hill Coal Co. v. Chestnut,* 355 Pa. 13, 17, 18, 47 A. 2d 801; *Knowles's Estate,* 295 Pa. 571, 580-587, 145 A. 797, and cases therein cited: *Com. v. Loftus,* 292 Pa. 395, 397, 141 A. 289; *Com. v. Meyers,* 290 Pa. 573, 583, 139 A. 374; *Reeves v. Phila. Suburban Water Co.,* 288 Pa. 418, 419, 420, 136 A. 526. Such rule also applies to attacks on the validity of ordinances: *Perrin Appeal,* 305 Pa. 42, 156 A. 305.

Almost 100 years ago this Court in *Smith v. Mc-Carthy,* 56 Pa. 359, 362-3, said: "Even supposing the act to be as alleged, unconstitutional, private parties cannot interfere by bill to ask it to be so declared, *unless on account of some special damage or injury to them in person or property.*" (Emphasis supplied) In *Dwyer v. Dilworth,* 392 Pa. 123, 127, 128, 139 A. 2d 653, we recently reaffirmed the same principle.

In the case at bar, there is no evidence of any interest on the part of White or the Boards which entitles them to maintain this action.

In view of the conclusion reached, we need not consider the other questions raised on these appeals.

Decree reversed. Costs on appellees.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. A taxpayer in my judgment has a standing to bring this bill in equity. If a taxpayer or a person whose property interest or the value thereof is af-

---

[6] Cf: *Loewen v. Shapiro,* 389 Pa. 610, 613, 133 A. 2d 525.

fected by an action of an Authority, has no legal standing to challenge the acts or the validity or the constitutionality of an ordinance or of an act of the legislature, or the validity and constitutionality of the acts of an Authority, the Courts have allowed to be created a corporation above and beyond the Law—i.e., above and beyond the legislative statutes and/or councilmanic ordinances and above and beyond the provisions of the Constitution of Pennsylvania and the Constitution of the United States. Such absolute, unlimited, omnipotent, unassailable power, placing a legislatively or councilmanically created Authority above the Constitution and above all law, is to me unthinkable.

Mr. Justice O'Brien joins in this dissenting opinion.