**DuFour Editions, Inc. v. Kurtzman**

*William Fearen*, for plaintiffs.

*Patrick Washington*, Deputy Attorney General, for defendants.

LIPSITT, J., June 30, 1969.—The dominant poser in this case is the standing of plaintiffs, DuFour Editions, Inc. and Paul J. DuFour, individually, as taxpayers of the Commonwealth of Pennsylvania and the United States of America to maintain this action in equity. Defendants are the Superintendent of Public Instruction of the Commonwealth and certain Commissioners of Education and a Director in the Department of Public Instruction, all of whom are officials charged with the administration of the educational program in the State of Pennsylvania. Specifically the complaint concerns itself with the implementation by the Department of Public Instruction of Title II of the Elementary and Secondary Education Act of 1965, P. L. 89-10, 20 U. S. C. A. §821, et al., enacted by the Congress of the United States through which certain Federal funds are made available for the purchase of books and other library resources for public and private schools. Under the act each State including Pennsylvania receives an annual allocation

of funds upon the condition that the State file with the United States Commissioner of Education a detailed plan outlining the procedures under which the funds will be administered by the State. The grant is obtainable after such plan is approved by the Commissioner of Education.

Plaintiffs here allege that the State plan has not been properly administered. They contend that the manner of selection and acquisition of library resources actually being employed by the Department of Public Instruction is contrary to the procedure filed with the United States Commissioner of Education and thus unlawful under the State plan and under the Federal regulations promulgated to insure proper use of Federal funds. The prayer requests an injunction to prevent further implementation of the Pennsylvania plan and an abolishment of a price discount requirement in the purchase of books.

By way of background, the Pennsylvania plan established a library resources selection advisory committee composed of specialists in several educational areas. This committee developed a book list for elementary books and a separate list for secondary books containing in the aggregate approximately 30,000 volumes, and these two lists were characterized as the "approved for selection guide" which was thereupon made available to teachers and school administrators throughout the state. The complaint alleges that the said advisory committee does not represent the area of expertise alleged in the plan; that the book lists prepared by the committee do not represent the product of experts in the various fields; that the lists have not been prepared in consideration of needs of students and teachers; and that because of the failure of the Department of Public Instruction to adhere to the requirements of the plan which it filed, the product produced by its advisory

committee totally omitted certain significant areas of learning inconsistent with the Federal regulations. In addition thereto the plaintiffs assert an unlawful censorship results by reason of areas of learning being excluded from the book lists from which Title II purchases must be made and because the adoption of price discount requirements prevents purchase of books of university presses, plaintiffs and others with Title II funds.

Defendants have demurred to the complaint alleging that a cause of action has not been stated because "(1) the averments of taxpayer status do not vest any right of action in plaintiffs to challenge the use of Federal funds in a State court, nor does the complaint contain any other averments which confer standing on the plaintiffs to maintain this action and (2) the facts alleged in the complaint are not sufficient to constitute any cause of action in equity or otherwise."

On the issue of standing defendants initially urge the action is a suit against the Commonwealth barred by the doctrine of sovereign immunity. This familiar legal principle necessitates little discussion. A suit against State officials may in fact be a suit against the Commonwealth which can be defended on the ground of immunity in the absence of some statutory agreement on the part of the State to be sued. However in the instant case, plaintiffs correctly point out that they are not attempting to impose any liability upon the Commonwealth or seeking to compel any particular affirmative act. The conclusion of the Supreme Court in Philadelphia Life Insurance Company v. Commonwealth, 410 Pa. 571 (1963) at paragraph 576 is pertinent here:

"The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute

claimed to be unconstitutional. Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity."

The concept of sovereign immunity is not applicable in the present situation where plaintiffs are asking to have the officers of the Commonwealth follow a certain procedure in conformity with an arrangement made between the Department of Public Instruction and the Commissioner of Education.

The principal query in this controversy is whether plaintiffs as taxpayers have standing to raise an issue of the within nature. Plaintiffs note that under the Federal statute the use of Title II funds must be related to the needs of students and teachers. They acknowledge that this requirement would be met under the implementation of the submitted Pennsylvania plan which provides for the participation of subject specialists and teachers in the selection of materials to be acquired with Federal funds. But in the utilizations of the funds, the complaint alleges that the plan is not followed by defendants, teachers and qualified specialists are not consulted in the selection of library resources and further, that the approved lists arbitrarily exclude all books in the field of modern foreign languages and all works of any living poet.

As a result of the alleged violation of the plan and the failure to comply with Federal requirements, plaintiffs believe they have averred that expenditures of Title II funds are unlawful and that they have standing to enjoin such unlawful expenditures. The apt legal principle was referred to in Mayer v. Hemphill, 411 Pa. 1 (1963), where the Supreme Court recited at p. 6 the:

". . . well settled general rule that a taxpayer has a right and a standing to sue to enjoin public officials from wrongfully or unlawfully expending public money, and in such cases the complainant need not have any special interest which is damaged other than his interest as a taxpayer. . . ."

Also cited is Harris v. Philadelphia, 299 Pa. 473 (1930), where the court held that a taxpayer has standing to enjoin the expenditure of funds for the failure on the part of the public officials to meet the requirements of law with respect to the method of letting municipal contracts.

In support of their contention that plaintiffs have no standing as taxpayers, defendants place especial significance upon the holding in White v. Philadelphia, 408 Pa. 397 (1962), which defendants assert is controlling here. In White there was also a project financed by Federal funds, and it was held that an averment in the complaint that the plaintiffs were taxpayers of the city and the Federal government did not vest in them any standing to attack an ordinance related to an agreement to provide low rent housing units under the Public Housing Administration.

Plaintiffs counter the White opinion by arguing and it appears correctly that plaintiffs are not attacking any ordinance or statute but merely asking compliance with a plan and regulations existing by virtue of a statute. Of some import is that the White case was decided largely on the authority of Frothingham v. Mellon, 262 U. S. 447 (1923), which had been a landmark case barring Federal taxpayer suits without the showing of special interest. Recently the standing doctrine in Frothingham was modified in the case of Flast v. Cohen, 392 U. S. 83 (1968). In Flast plaintiffs relying exclusively on their status as Federal taxpayers sought injunctive relief alleging that the United States Commissioner of Education's approval

of certain expenditures of Federal money to aid instruction in religious schools was unauthorized by statute or if authorized was in violation of the establishment and free exercise clause (freedom of religion) of the first amendment. The Supreme Court reversing the District Court for the Southern District of New York which had relied upon the Frothingham case held the taxpayer status was sufficient to confer standing.

Additionally, it may be observed that the court in the White case excluded situations where there was some special damage or injury to person or property. See 408 Pa. at p. 402 citing Smith v. McCarthy, 56 Pa. 359 (1867).

Plaintiffs call attention to the fact that the complaint alleges a specific interest on their part since they urge the conduct of the defendants makes it impossible for them to supply school books which would otherwise be appropriate, and thus plaintiffs have alleged a particular interest beyond that of a mere taxpayer.

The final point raised by defendants is that the facts averred in the complaint do not state a cause of action. Defendants urge that many of the averments are without basis or contain statements taken out of context or do not substantiate the allegations of injury. They complain that the action is a subterfuge by the plaintiffs to have the decisions of the Department of Public Instruction twisted to the advocacy of plaintiffs' point of view. As a parting shot, it is said that plaintiffs are attempting to compel the Department of Public Instruction to purchase books from them at noncompetitive prices.

It is doubtful if defendants are seriously advancing these propositions to show there is no cause of action on a demurrer. It may well be that plaintiffs will have difficulty in proving their allegations. But this possi-

bility cannot be considered on a preliminary objection. Nor would the motivations of plaintiffs in instituting the action be a proper subject for examination.

For the reasons discussed, we conclude that plaintiffs have standing to sue and that the complaint states a cause of action and, therefore, enter the following

### ORDER

And now, June 30, 1969, defendants' preliminary objections are hereby dismissed and defendants are given leave to answer plaintiffs' complaint within 20 days hereof.