## Kauffman et al., Appellants, *v.* Osser.

Argued September 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

152

*Sheldon W. Farber,* for appellants.

*John McNally, Jr.,* with him *Levy Anderson* and *Matthew W. Bullock, Jr.,* for appellee.

OPINION BY MR. JUSTICE JONES, November 12, 1970:

On May 15, 1970, Sylvia Kauffman and Phyllis Gitlin (appellants), instituted an action under the Uniform Declaratory Judgments Act[1] in the Court of Common Pleas of Philadelphia City against three named individuals who constitute the County Board of Elections and one individual, its chief clerk (election officials), in the City of Philadelphia.[2]

This action was brought by the appellants who purported to act on their own behalf as registered electors of the Democratic party in Philadelphia who intend to vote *in person* at the polls in the November 1970 election and the purpose of the action was to enjoin and restrain the election officials from issuing or recognizing a certain class of absentee ballots on the ground

---

[1] Act of June 18, 1923, P. L. 840, 12 P.S. §831 et seq.

[2] Originally named as a party to this action, the Secretary of the Commonwealth filed preliminary objections which were sustained by the court below. No appeal from that determination has been taken and appellants recognize, in their brief, that the Secretary is no longer a party to this litigation.

that the provisions of the Absentee Ballot Law[3] authorizing such class of ballots are invalid under the federal and state constitutions.

Preliminary objections filed by the election officials were sustained by the court below and the appellants' complaint dismissed. From that order, the instant appeal stems.

Appellants urge several reasons why various provisions of the absentee ballot statute are constitutionally infirm: (1) that, insofar as the statute permits qualified electors and their spouses while on "vacations", on election dates, to vote by absentee ballots, the statute violates Article VII, Section 14, of the Pennsylvania Constitution;[4] (2) that the provisions of the statute providing for the manner of challenging absentee ballots (i.e., the time when challenges must be made, the paucity of time within which a challenge may be entertained, the grounds for challenge and the lack of an appropriate method of reviewing the propriety of the challenges), violate both the equal protection and due process clauses of the U. S. Constitution and Article I, Section 5 of the Pa. Constitution;[5] (3) Section 8(f)

---

[3] Act of December 11, 1968, P. L.    , §4, 25 P.S. §3146.1.

[4] Article VII, Section 14, provides: "Absentee voting. The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the State or county of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability, may vote, and for the return and canvass of their votes in the election district in which they respectively reside." Appellants urge that qualified electors on "vacation" are not within the class of constitutionally permissible "absentee voters" and any attempt to enlarge or alter the constitutionally defined class is invalid.

[5] Article I, Section 5 provides: "Elections. Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

of the statute which requires a $10 deposit to challenge each absentee ballot violates both the 14th Amendment to the U. S. Constitution and Article I, Section 5 of the Pa. Constitution.[6]

The court below, in an opinion supporting its order, stated that: (a) it *adopted* the reasoning of two lower court cases (*Haakenson v. Parkhouse*, C. P. Montgomery County, No. 69-12670 and *Pisciotta v. County Commissioners*, Common Pleas, Philadelphia City, No. 2313 May Term, 1969) which upheld the validity of the ten dollar deposit necessary under the statute, to challenge an absentee ballot;[7] (b) "With regard to the extension of the privilege to vote by absentee ballot to those on vacation and their spouses, [it failed] to see how [appellants] are affected. The possible harm to be suffered by [appellants] is too speculative to give them standing to pursue this action." To the latter reason initially we address our inquiry.

Do the present appellants have a justiciable interest or standing to maintain the present action? The validity and constitutional conformity of a statute is not subject to attack in *vacuo*. Only a person or per-

---

[6] Section 8(f) of the statute provides: "Any person challenging an application for an absentee ballot or an absentee ballot for any of the reasons provided in this act shall deposit the sum of ten dollars ($10.00) in cash with the local election board, in cases of challenges made to the local election board and with the county board in cases of challenges made to the county board for which he shall be issued a receipt for each challenge made, which sum shall only be refunded if the challenge is sustained or if the challenge is withdrawn within five (5) days after the primary or election."

[7] Appellants argue that the court below considered these cases as *res judicata* of the issue. For this argument we find no record support. Moreover, the doctrine of *res judicata* is wholly inapplicable in the case at bar (See: *Callery v. Blythe Twp. Municipal Authority*, 432 Pa. 307, 311, 312, 243 A. 2d 385 (1968)) and, in fact, was not considered by the court below.

sons having a justiciable interest may launch such attack. The Uniform Declaratory Judgments Act—under which provisions this action was brought—provides in pertinent part: *"Any person . . . whose rights, status, or other legal relations are affected by a statute, . . .* may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relationships thereunder."* (Emphasis supplied). (Act of 1923, supra, §2, 12 P.S. §832). See: *Schoenbrun v. Nettrour,* 360 Pa. 474, 61 A. 2d 868 (1948).

Appellants take the position that, if qualified electors and their spouses while on "vacation" at the time of election are permitted to vote by absentee ballot or if the statutory requirements concerning the manner of exercising challenges to absentee ballots are enforced, the appellants and all other qualified Democratic electors in Philadelphia who intend to vote *in person* at the polls at the November 1970 election will have their votes diluted by the absentee votes and, thereby, the allegedly invalid provisions of the statute will "affect" their rights.

Questions of standing and justiciable interest arise not only in connection with the institution of litigation at the nisi prius level but also in connection with the right to challenge, at the appellate level, determinations made by subordinate courts. Although statutes governing such rights vary in language, it is generally well settled that an interest to be justiciable must be more than a general interest and must be a direct, substantial and present interest, as contrasted with a remote or speculative interest. See: *Beauty Hall v. State Board of Cosmetology,* 418 Pa. 225, 231-232, 210 A. 2d 495 (1965); 22 Am. Jur. 2d §11, p. 849. See also: *Man O'War R. Asso. v. State H.R. Commission,* 433 Pa. 432, 250 A. 2d 172 (1969); *Price v. Phila. Parking Authori-*

*ty*, 422 Pa. 317, 325-329, 221 A. 2d 138 (1966) ; *Dwyer v. Dilworth*, 392 Pa. 123, 127-128, 139 A. 2d 653 (1958) ; *White v. Phila.*, 408 Pa. 397, 402, 184 A. 2d 266 (1962).

Many years ago in *Smith v. McCarthy*, 56 Pa. 359, 362 (1867), we said: "Even supposing the act to be as alleged, unconstitutional, private parties cannot interfere by bill to ask it to be so declared, unless on account of some special damage or injury to them in person or property." Any objection to the validity of a statute must be raised by one having the right to do so. See: *Commonwealth v. Smith*, 409 Pa. 521, 187 A. 2d 267 (1963) ; *Knowles's Estate*, 295 Pa. 571, 580-582, 145 A. 797 (1929) ; *Gentile v. Philadelphia & R.R. Co.*, 274 Pa. 335, 118 A. 223 (1922) ; Jaffe, The Citizen as Litigant in Public Actions: The Non-Hohfeldian or Ideological Plaintiff, 116 U. of P. L. Rev. 1033 (1968).

Moreover, it is hornbook law that a person whose interest is common to that of the public generally, in contradistinction to an interest peculiar to himself, lacks standing to attack the validity of a legislative enactment. See: *Doremus v. Bd. of Education*, 342 U.S. 429, 434, 72 S. Ct. 394 (1952) ; *Ex parte Lévitt*, 302 U.S. 633, 58 S. Ct. 1 (1937) ; *Buchanan v. Warley*, 245 U.S. 60, 38 S. Ct. 16 (1917) ; *Knowles's Estate*, supra; *St. Bartholomew's P.E. Church Charter*, 260 Pa. 284, 103 A. 826 (1918) ; *Calvary Bible Presbyterian Church v. Bd. of Regents*, 72 Wash. 2d 912, 436 P. 2d 189 (1967), cert. den., 393 U.S. 960, 89 S. Ct. 389 (1968). See also: 16 Am. Jur. 2d §122, p. 318; Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265 (1961). In *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691 (1962), while holding there was standing, the United States Supreme Court framed the precise issue to be: "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the

presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing." 369 U.S. at 204, 82 S. Ct. at 703.

We have examined with great care appellants' claim to standing and to a justiciable interest to maintain this action. In our opinion, the interest of appellants is not peculiar to them, is not direct, and is too remote and too speculative to afford them, either in their individual capacities or in their claimed class representative capacity, a standing to attack these statutory provisions. Basic in appellants' position is the *assumption* that those who obtain absentee ballots, by virtue of statutory provisions which they deem invalid, will vote for candidates at the November election other than those for whom the appellants will vote and thus will cause a dilution of appellants' votes. This assumption, unsupported factually, is unwarranted and cannot afford a sound basis upon which to afford appellants a standing to maintain this action. While the voter-appellants in *Baker v. Carr* were able to demonstrate injury distinct from other voters in the state, the interest which appellants claim is nowise peculiar to them but rather it is an interest common to that of all other qualified electors. In the absence of any showing of a legal standing or a justiciable interest to maintain this action, we cannot permit their challenge to the validity of this statute.

In view of the conclusion reached, we do not, nor need we, express any opinion as to the validity of the statutory provisions which this action attacks.

Order affirmed.

Mr. Chief Justice BELL concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The legislature may enact laws governing the conduct of elections. *Winston v. Moore*, 244 Pa. 447, 91

Atl. 520 (1914). However, "no legislative enactment may contravene the requirements of the Pennsylvania or United States Constitutions." *Shankey v. Staisey,* 436 Pa. 65, 68-9, 257 A. 2d 897, 898, cert. denied, 396 U.S. 1038 (1970). Article VII, Section 14 of our Constitution provides that absentee ballots may be cast by those away from their election districts because "their duties, occupation or business require them to be elsewhere." The Absentee Ballot Law, Act of December 11, 1968, P. L. , §3(z-3), 25 P.S. §2602(z-3) (Supp. 1970), provides that "duties, occupations or business" shall include, *inter alia,* vacations and thus electors and their spouses on vacation on election day are permitted to vote by absentee ballot. The statute is thus a clear and unconscionable violation of the Pennsylvania Constitution, which the majority condones and I must condemn. Absent a constitutional amendment, such enactment cannot constitutionally stand.

This is such a clear constitutional violation and such an open invitation to fraud that justice and the sanctity of the ballot demand a remedy. In the sensitive area of the electoral process we should recognize, as the United States Supreme Court did in *Baker v. Carr,* 369 U.S. 186, 82 S. Ct. 691 (1962), and as our Court did in our own reapportionment case, *Butcher v. Bloom,* 415 Pa. 438, 203 A. 2d 556 (1964), that what is justiciable and what is political is a mere fiction not to be applied unless justice so dictates. *See,* Jaffe, The Citizen As Litigant In Public Actions: The Non-Hohfeldian or Ideological Plaintiff, 116 U. Pa. L. Rev. 1033 (1968) ;[1] Jaffe, Standing To Secure Judicial Re-

---

[1] "There are, however, cases where discrimination or repression is latent, where no particular individual is as yet a demonstrable object of such unconstitutional action. It is alleged, for example, that a civil service system discriminates against Negroes otherwise eligible. It is alleged that a threat to draft individuals who actively protest the draft discourages free speech. In neither of these

view: Public Actions, 74 Harv. L. Rev. 1265 (1961).[2] We should reach the issues here and not retreat behind the facade of standing. If there is to be judicial protection of the sanctity of the ballot from the unconstitutional exercise of legislative authority in establishing voting procedures, standing should be permitted and the issues determined.

I dissent.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this dissent.

___

cases is any particular individual the object of the illegal action. But if there is to be judicial protection of the individual from the impact of these unconstitutional exercises of power, it may be that an action by a plaintiff whose credentials are something less than traditional must be allowed." 116 U. Pa. L. Rev. at 1045-46.

[2] "The conclusion thus emerges that there should be a single form of citizen action—one which is competent to test state and local official conduct whether or not involving the expenditure of funds and whether negative or positive in form. The citizen, as the prime political unit of the democracy, should be the plaintiff. . . . [M]y thesis is that the public action is deeply imbedded in our system; that it performs an important function; and that unless other methods are devised, the public action should be rationally adapted to the performance of that function. . . . I would attempt to formulate principles of caution based on the nature of the issue to be decided and the possibility of effective judicial action." 74 Harv. L. Rev. at 1296.