**In re: GENERAL ELECTION 2014.**

**Muriel Kauffman.**

**Appeal of: Helen Banushi, Philadelphia Registered Elector and Elizabeth Elkin, Philadelphia Registered Elector.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 2015.

Decided March 11, 2015.

Linda A. Kerns, Philadelphia, for appellants.

Adam C. Bonin, Philadelphia, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, P. KEVIN BROBSON, Judge, PATRICIA A. McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

Helen Banushi and Elizabeth Elkin, Philadelphia Registered Electors (collectively, Objectors) appeal the order of the Philadelphia County Court of Common Pleas (trial court) granting the Emergency Application for Absentee Ballot (Emergency Application) filed by Muriel Kauffman (Kauffman) to vote by absentee ballot for the November 4, 2014 General Election (General Election). We quash the appeal.

On the evening of the General Election, Iaela Grant (Grant), the Director's Assistant Manager at Power Back Rehabilitation Center (Power Back) in Philadelphia, filed the Emergency Application for absentee ballots for Kauffman and four other Power Back patients with the City Commissioner's Office.[1] At a hearing before the trial court, Thomas Boland, a Voter Registration Clerk in the City Commis-

---

1. Article 7, Section 14(a) of the Pennsylvania Constitution states, in relevant part:

> (a) The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, ... on the occurrence of any election, are unable to at their proper polling places because of illness or physical disability ... may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

Pa. Const. art. VII, § 14(a).

In turn, Section 1301(k) of the Election Code, Act of June 3, 1937, P.L. 1333, added by the Act of March 6, 1951, P.L. 3, *as amended*, 25 P.S. § 3146.1(k), states, "[t]he following persons shall be entitled to vote by an official absentee ballot in any ... election ... Any qualified registered and enrolled elector who because of illness or physical disability is unable to attend his polling place...." *See also* Section 3302(a)(1) of the Pennsylvania Voter Registration Act, 25 Pa.C.S. § 3302(a)(1) ("Notwithstanding the provisions of Part IV (relating to voter registration) or the [ ] Election Code, the following persons may make application for an absentee ballot by sending a letter or other signed document to the county board of elections.... A registered elector who is unable to attend the polling place on the day of any ... election because of illness or physical disability.").

Regarding how application shall be made, Section 1302.1(a), (a.1), (a.2) and (c) of the Election Code, added by the Act of August 13, 1963, P.L. 707, *as amended*, 25 P.S. § 3146.2a(a.1), (a.2), (c), states, in pertinent part:

> (a) Except as provided in subsections (a.1) and (a.2), applications for absentee ballots shall be received in the office of the county board of elections not earlier than fifty (50) days before the ... election and not later than five o'clock P.M. of the first Tuesday prior to the day of any ... election.
>
> (a.1) Except as provided in subsection (a.2), in the event any elector otherwise qualified who is so physically disabled or ill on or before the first Tuesday prior to any primary or election that he is unable to file his application or who becomes physically disabled or ill after the first Tuesday prior to any primary or election and is unable to appear at his polling place ..., which fact was not and could not reasonably be known to said elector on or before the first Tuesday prior to any ... election, the elector shall be entitled to an absentee ballot at any time prior to five o'clock P.M. on the first Friday preceding any ... election upon execution of an Emergency Application in such form prescribed by the Secretary of the Commonwealth.
>
> (a.2) In the event any elector otherwise qualified who becomes so physically disabled or ill between five o'clock P.M. on

sioner's Office, explained that he informed Grant that the wrong forms had been completed [2] and that she should appear before the trial court for relief because all of the patients involved are registered electors in the City and County of Philadelphia. (N.T. 11/4/14 [3] at 4). Boland stated that

the correct forms say "Emergency Alternative Ballot Application;" has the voter's signature and address, and can be used up to the election day. (*Id.* at 22).

Jonathan Goldstein, Esquire, counsel for the Republican State Committee,[4] questioned Grant and she explained

> the first Friday preceding any ... election and eight o'clock P.M. on the day of any ... election that he is unable to appear at his polling place ..., which fact was not and could not reasonably be known to said elector prior to five o'clock P.M. on the first Friday preceding any ... election, the elector shall be entitled to an absentee ballot if the elector completes and files with the [trial court] an Emergency Application or a letter or other signed document, which includes the same information as is provided on the Emergency Application. Upon a determination that the elector is a qualified absentee elector under section 1301, the judge shall issue an absentee ballot to the elector. If the elector is unable to appear in court to receive the ballot, the judge shall give the elector's absentee ballot to an authorized representative of the elector who is designated in writing by the elector. The authorized representative shall deliver the absentee ballot to the elector and return the completed absentee ballot, sealed in the official absentee ballot envelopes, to the county board of elections, who shall distribute the ballot, unopened, to the absentee voter's election district.... No absentee ballot under this subsection shall be counted which is received in the office of the county board of elections later than eight o'clock P.M. on the day of the ... election.
>
> \* \* \*
>
> (c) In the case of an elector who is physically disabled or ill on or before the first Tuesday prior to a primary or election or becomes physically disabled or ill after the first Tuesday prior to a primary or election, such Emergency Application, letter or other signed document shall contain a supporting affidavit from his attending physician stating that due to physical disability or illness said elector was unable to apply for an absentee bal-

> lot on or before the first Tuesday prior to the primary or election or became physically disabled or ill after that period.

*See also* Section 1306(a)(1) of the Election Code, 25 P.S. § 3146.6(a)(1) ("Any elector who submits an Emergency Application and receives an absentee ballot in accordance with section 1302.1(a.2) or (c) shall mark the ballot on or before eight o'clock P.M. on the day of the ... election. This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail ... or deliver it in person to said county board of election.'").

2. Section 1302.2(d) of the Election Code provides that "[i]n the event that any application for an official absentee ballot is not approved by the county board of elections, the elector shall be notified immediately to that effect with a statement by the county board of the reasons for the disapproval." 25 P.S. § 3146.2c(d).

3. "N.T. 11/4/14" refers to the transcript of the trial court hearing on November 4, 2014.

4. Section 310 of the Election Code states, in relevant part:

> (a) Any party or political body or body of citizens which now is ... entitled to have watchers at any registration [or] ... election, shall also be entitled to appoint watchers who are qualified electors ... or attorneys to represent such party or political body or body of citizens ... at any computation and canvassing of returns of any ... election and recount of ballots ... under the provisions of this act. Such watchers or attorneys may ex-

ercise the same rights as watchers at registration and polling places....

(b) Every candidate shall be entitled to be present in person or by attorney ... and to participate in any proceeding before any· county board whenever any matters which may affect his candidacy are being heard, including any computation and canvassing of returns of any ... election or recount of ballots ... affecting his candidacy.

(c) Any candidate, attorney or watcher present at any recount of ballots or recanvass of voting machines shall be entitled to examine the ballots, or the voting machine and to raise any objections regarding the same, which shall be decided by the county board, subject to appeal, in the manner provided by this act.

25 P.S. § 2650(a)-(c).

Likewise, Section 1308 provides, in pertinent part:

(b) Watchers shall be permitted to be present when the envelopes containing official absentee ballots are opened and when such ballots are counted and recorded.

\* \* \*

(e) ... If the local election board is satisfied that the declaration is sufficient and the information ... verifies his right to vote, the local election board shall announce the name of the elector and shall give any watcher present an opportunity to challenge any absentee elector upon the ground or grounds (1) that the absentee elector is not a qualified elector; or (2) that the absentee elector was within the municipality of his residence on the day of the primary or election during the period the polls were open, ... except in the case where his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability; or (3) that the absentee elector was able to appear personally at the polling place on the day of the ... election during the period the polls were open in the case his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability. Upon challenge of any absentee elector, as set forth herein the local election board shall mark "challenged" on the envelope together with the reason or reasons therefor, and the same shall be set aside for return to the county board unopened pending decision by the county board and shall not be counted.... With respect to the challenged ballots, they shall be returned to the county board with the returns of the local election district where they shall be placed unopened in a secure, safe and sealed container in the custody of the county board until it shall fix a time and place for a formal hearing of all such challenges and notice shall be given where possible to all absentee electors thus challenged and to every attorney, watcher or candidate who made such challenge.... The decision of the county board in upholding or dismissing any challenge may be reviewed by the court of common pleas of the county upon a petition filed by any person aggrieved by the decision of the county board. Such appeal shall be taken ... to the court of common pleas setting forth the objections to the county board's decision and praying for an order reversing same·....

25 P.S. § 3146.2c(b), (e).

Based on the foregoing, counsel for the Republican State Committee or another committee or a candidate could appear and object to the Emergency Applications in the trial court in this case. As we explained in *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 839 A.2d 451, 457 (Pa. Cmwlth.), *rev'd on other grounds*, 577 Pa. 231, 843 A.2d 1223 (2004):

[Under Section 310], the Democratic State Committee is a political body because it has the power to appoint watchers to insure the integrity of the voting process; therefore, it has the right to raise objections to the allowance or disallowance of votes, including the right to be present when the envelopes containing the official absentee ballots are opened, counted and recorded. Watchers do not have independent standing; they are agents for the political body that appoints them. If the ballots had been disallowed, the Democratic State Committee could raise objections to discrepancies that its watchers found at the polling places. Because of the status given in this regard to political bodies, under the Election Code, the Democratic State Committee has standing.... (Footnote and citation omitted).

*See also In re Absentee Ballots of Zimmerman*, 41 Pa.Cmwlth. 575, 400 A.2d 895, 896 (1979) ("There is no doubt that Section 1308(e) of

that she brought applications for five Power Back patients[5] that had been admitted on October 29 or 30, 2014, prior to October 31, 2014, after the first Tuesday preceding the General Election, but before the first Friday before the General Election. Grant testified that Power Back is a rehabilitation facility and the patients would not know when they would be discharged. She explained that the average stay is two weeks, but that it depends on the diagnosis and that a one- or two-day stay was unlikely. She stated that she would not be surprised to learn that there is a law office nearby, but that she did not know if there is a notary nearby.

At the conclusion of her testimony, Attorney Goldstein argued that the patients were required to apply for absentee ballots in a substantially different form than the one submitted because while all of the Emergency Applications were signed by a physician, they were not signed and notarized affidavits as required by Section 1302.1(c) of the Election Code.

Adam Bonin, Esquire, counsel for Wolf for Governor (Gubernatorial Candidate), then questioned Grant and she explained that patients would not know the date of discharge because it is based upon their progression and recovery from the reason for admission and the actual discharge date comes from the doctor and the therapist. Grant stated that there is not a notary in the facility and the doctors nor-

mally do not have enough free time to leave and find a notary. She testified that the patients themselves made the request for the absentee ballots and that she first became aware of their need for emergency absentee ballots that day.

Bonin argued that based on Grant's testimony, these voters fall within the provisions of Section 1302.1(a.2), and while they may not have filled out the correct form or included a notarized affidavit, the guiding principle of the Election Code is that every registered voter should have the opportunity to vote. He argued that these patients were recently admitted to rehab and had reason to believe that they could vote at the polls and submitted the Emergency Applications when they recognized that they would not be able to do so.

Linda Kerns, Esquire, counsel for the Republican City Committee, questioned Grant and Grant testified that the patients involved could not go to their polling places themselves because they are not allowed to leave the facility unless accompanied by a friend or family member. Grant stated that the patients first learned that they could not leave the facility upon their admission. Attorney Kerns argued that the specific emergency ballot provided for in Section 1302.1(a.2) does not apply in this case because the patients were aware of their inability to appear at their polling place prior to 5:00 p.m. on the Friday preceding the General Election and even if

the Election Code [ ] places the power in the board to enter upon the inquiry when an absentee ballot is challenged. The challenger must be either an 'attorney, watcher, or candidate.' This, we agree, is a matter of standing...."); Section 1407(a) of the Election Code, 25 P.S. § 3157(a) ("Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any ... election, or regarding any recount or recanvass thereof ..., may appeal therefrom within two days after such order or decision shall have been

made, whether then reduced to writing or not, to the court specified in this subsection, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief.").

5. Grant explained that Power Back is a rehabilitation center that treats patients with various disabilities following surgery in a hospital. (N:T. 11/4/14 at 4). The length of a patient's stay is determined on a case-by-case basis by the attending doctor and therapist and the average stay is two weeks. (*Id.* at 4).

it did apply, the instant applications do not contain a sworn affidavit or that they were signed under penalty of perjury as required by that section.

■ At the conclusion of the hearing, the trial court granted the Emergency Applications stating, in pertinent part, that the patients would have been entitled to receive an Emergency Alternative Ballot if they had filled out the proper application which required the same information as provided in the patients' Emergency Applications. (N.T. 11/4/14 at 23–24). The trial court also determined that because the Emergency Applications that were submitted did not "fl[y] in the face of the intent of the Legislature" and because Power Back did not have the correct forms, not allowing the patients to vote would be "elevating form over substance." (N.T. 11/4/14 at 24). As a result, the trial court issued an order granting Kauffman's Emergency Application and issuing Kauffman an absentee ballot for the General Election over Attorney Goldstein's and Attorney Kerns' objections. (*Id.*). While neither the Republican State nor City Committee appealed, Objectors filed this appeal of the trial court's order.[6]

■ Objectors first claim that the trial court erred in determining that they do not have standing to appeal its order because they are registered electors in the City of Philadelphia and they have a substantial, immediate and pecuniary interest that the Election Code be obeyed and that the absentee ballots that Kauffman and the other Power Back patients cast affected the outcome of the General Election in which Objectors voted.[7] We do not agree.

■ Pa. R.A. P. 501 states, in relevant part, that "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom." While "party" is not defined in the Rules of Appellate Procedure, Section 102 of the Judicial Code[8] defines the term as "[a] person who commences or against whom relief is sought in a matter. The term includes counsel for such a person who is represented by counsel." 42 Pa.C.S. § 102. As the Supreme Court has held, "[t]here is but one way to become a party litigant in a court and that is by appearing in the proceedings." *Appeal of Greco*, 434 Pa. 431, 254 A.2d 6, 7 (1969). Because Objectors

---

6. In the Pa. R.A.P.1925(a) opinion that it filed in support of its order, the trial court initially determined that Objectors do not have standing to file this appeal. (11/18/14 Trial Court Opinion at 3–7). In determining whether a party has standing, a court is concerned only with the question of who is entitled to raise a legal challenge and not the merits of that challenge. *In re T.J.*, 559 Pa. 118, 739 A.2d 478, 481 (1999).

7. As the Pennsylvania Supreme Court has explained:

> [I]n considering statutory provisions of the Election Code, we must remember "the longstanding and overriding policy in our Commonwealth to protect the elective franchise." To promote this policy, this Court has consistently held that the provisions of the Election Code must "be liberally construed to protect a candi-

date's right to run for office and the voters' right to elect the candidate of their choice." At the same time, however, we have said that "the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process."

*In re 2003 General Election for Office of Prothonotary*, 578 Pa. 3, 849 A.2d 230, 237 (2004) (citations omitted).

8. This Court has noted, "[t]ne note following Pa. R.A.P. 102, *Definitions*, indicates that the definitions contained therein are based on 42 Pa.C.S. § 102." *In re Petition for Referendum to Amend Home Rule Charter of City of Pittsburgh*, 69 Pa.Cmwlth. 292, 450 A.2d 802, 803 n. 2 (1982) (emphasis in original).

were not parties in the proceedings before the trial court, they do not have standing to appeal its order disposing of the instant Emergency Application to this Court. *See Commonwealth v. Alessi*, 105 Pa.Cmwlth. 453, 524 A.2d 1052, 1053 (1987) ("We must quash DPW's appeal, however, inasmuch as Pa. R.A.P. 501, with certain exceptions not applicable here, permits an appeal to this Court *only by a party*.") (emphasis in original).

Additionally, in order to file an appeal under Pa. R.A.P. 501, a party must be "aggrieved" by the appealed order. *See In re T.J.*, 739 A.2d at 481 ("As a general matter, the core concept of the doctrine of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' and has no right to obtain a judicial resolution of his challenge.") (citation omitted). A party is aggrieved when he or she has a "substantial, direct, and immediate" interest in the subject matter of the appeal. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 282–84 (1975). Specifically, "the requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest

other than the abstract interest of all citizens in having others comply with the law." *Id.* at 282. "The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *Id.* (footnote omitted). Finally, "[t]he remaining requirements of the traditional formulation of the standing test are that the interest be 'immediate' and 'not a remote consequence of the judgment.' [T]hese two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it." *Id.* at 283.

As outlined above, Objectors claim that they have standing to appeal the trial court's order because they are registered electors in the City of Philadelphia and they have a substantial, immediate and pecuniary interest that the Election Code be obeyed and the absentee ballots that Kauffman and the other patients cast affected the outcome of the General Election in which they voted.[9] However, these claims do not support a finding of standing in the instant matter because they were not parties in the trial court and they do not show a "substantial, direct, and imme-

9. In arguing that they have met this standing requirement, Objectors mistakenly rely on part of a sentence in our opinion in *In re Nominating Petition of Barlip*, 59 Pa.Cmwlth. 178, 428 A.2d 1058, 1060 (1981), in which we held that a committee of a political party had standing to challenge a nomination petition because it "is an organization representing qualified electors" under Section 801 of the Election Code, 25 P.S. § 2831, and "that any person who is registered to vote in a particular election has a substantial interest in obtaining compliance with the election laws *by any candidate for whom that elector may vote in that election, and such electors therefore have standing to challenge the nominating petitions of those candidates*." (Emphasis added). That case expressly did not involve a

case such as this where individual electors have appealed a trial court order permitting other admittedly qualified electors to vote by absentee ballot and who did not participate in the trial court proceedings underlying that appealed order. As explained above, the Republican State Committee, the Republican City Committee, and the Gubernatorial Candidate appeared in the trial court through counsel and raised the same objections to the instant Emergency Applications at the hearing before the trial court as those raised by Objectors in this appeal. *See In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 839 A.2d at 457; *In re Nominating Petition of Barlip*, 428 A.2d at 1060; *In re Absentee Ballots of Zimmerman*, 400 A.2d at 896.

diate" interest in the subject matter of this appeal.

The trial court properly cited *Kauffman v. Osser*, 441 Pa. 150, 271 A.2d 236 (1970), in which registered Democratic electors filed a declaratory judgment action [10] in the trial court against the Philadelphia Board of Elections and its chief clerk challenging the validity of Section 1301 of the Election Code which permits electors and their spouses who are on vacation to vote by absentee ballot and requires a deposit to challenge an absentee ballot. In that case, the electors claimed that if qualified electors and their spouses are permitted to vote by absentee ballot while on vacation or if the deposit to challenge the ballots is enforced, the electors and all other Democratic electors who intended to vote would have their votes diluted by the absentee ballots and the allegedly invalid provisions of Section 1301 will thereby "affect" their rights. *Id.* at 239.

In rejecting a finding of standing, the Supreme Court explained:

> In our opinion, the interest of appellants is not peculiar to them, is not direct, and is too remote and too speculative to afford them, either in their individual capacities or in their claimed class representative capacity, a standing to attack these statutory provisions. Basic in appellants' position is the *assumption* that those who obtain absentee ballots, by virtue of statutory provisions which they deem invalid, will vote for candidates at the November election other than those for whom the appellants will vote and thus will cause a dilution of appellants' votes. This assumption, unsupported factually, is unwarranted and cannot afford a sound basis upon which to afford appellants a standing to maintain this action. While the voter-appellants in *Baker v. Carr* [, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962),] were able to demonstrate injury distinct from other voters in the state, the interest which appellants claim is nowise peculiar to them but rather it is an interest common to that of all other qualified electors. In the absence of any showing of a legal standing or a justiciable interest to maintain this action, we cannot permit their challenge to the validity of this statute.

*Id.* at 239–40 (emphasis in original). Likewise, in the instant appeal, Objectors have failed to show the requisite "substantial, direct, and immediate" interest by merely alleging the common interest of all qualified electors that the provisions of the Election Code be followed and the unsupported allegation that the five absentee ballots at issue in this matter in any way affected the outcome of the General Election.[11, 12]

Accordingly, the appeal is quashed.[13]

---

**10.** While *Kauffman* involved a declaratory judgment action, the Supreme Court specifically noted that "[q]uestions of standing and justiciable interest arise not only in connection with the institution of litigation at the nisi prius level but also in connection with the right to challenge, at the appellate level, determinations made by subordinate courts. Although statutes governing such rights vary in language, it is generally well settled that an interest to be justiciable must be more than a general interest and must be a direct, substantial, and present, as contrasted with a remote or speculative, interest." *Id.* at 239 (citations omitted).

**11.** *But cf. Pierce v. Allegheny County Board of Elections*, 324 F.Supp.2d 684, 692–93 (W.D.Pa.2003) (holding that voters pleaded a sufficient injury for Article III standing to restrain the third-party delivery of 937 absentee ballots to the Board of Elections in violation of the Election Code and the United States Constitution by alleging that there would be no mechanism for challenging the delivery procedure if the court did not act; the challenges are traceable to the Board's policies that are inconsistent with the Election Code and at least one other county; and setting aside the ballots for challenge rather

## ORDER

AND NOW, this *11th* day of *March,* 2015, the above-captioned appeal is quashed.

than comingling with other ballots would alleviate the alleged injury).

12. Moreover, the exception to traditional standing requirements announced in *In re Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), regarding taxpayer standing is inapplicable because, as outlined above, the Republican State Committee, the Republican City Committee, and the Gubernatorial Candidate all appeared in the trial court through counsel and raised the same objections to the instant Emergency Applications as those raised by Objectors in the instant appeal.

13. Based on our disposition of this issue, we will not address the other claims that Objectors raise in this appeal.