Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee, v. The Westmoreland-Fayette Municipal Sewage Authority and Scottdale Borough, Appellants.

Argued March 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

Robert P. Boyer, for appellant, Sewage Authority.

Joseph A. Hudock, for appellant, Borough.

Patrick Charles McGinley, Special Assistant Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, April 28, 1975:

On May 16, 1973, the Department of Environmental Resources (DER) issued four orders addressed to Everson Borough, Scottdale Borough, Westmoreland-Fayette Municipal Sewage Authority (Authority)[1] and East Huntingdon Township. By said orders, the aforesaid municipal entities were directed to "negotiate, develop and execute such agreements and other documents as are necessary" to abate the pollution caused by the discharge of untreated and inadequately treated sewage into waters of the Commonwealth, in violation of The Clean Streams Law.[2] The DER orders recited, and it has since been stipulated to, that the complaint of pollution originated from homes situate in East Huntingdon Township.

The Authority, Everson Borough and Scottdale Borough joined in an appeal from said orders to the Environmental Hearing Board (EHB). The appellants alleged the absence of authority in the DER to issue the subject orders. Since the parties were in agreement as

---

1. The Authority was initially formed by Everson and Scottdale Boroughs, and operates a sewage treatment plant for the benefit of those two municipalities.

2. ˙ Section 203 of the Act of June 22, 1937, P. L. 1987, as amended, 35 P.S. §691.203 (Supp. 1974-1975).

to the pertinent facts, a hearing before the EHB was deemed unnecessary. By an adjudication and order of the EHB, dated October 7, 1974, the appeal was dismissed. Thereafter, the disappointed municipal entities filed an appeal in this Court, citing, as grounds for reversal of the EHB decision, that a denial of appellants' due process rights would be effectuated by the enforcement of the DER orders.

Although appellants' due process attack is, of necessity, framed in the context of a taking of their property without just compensation, we must initially determine whether appellants may even mount such an attack. The U. S. Supreme Court has traditionally denied to municipalities the right to assert their due process protections against actions taken by their sovereign.[3] While recognizing the validity of this concept, appellants would nonetheless have this Court distinguish between its applicability where the municipal property rights "appropriated" by the state were rights in property used for proprietary, not governmental, purposes. However, the Supreme Court has not been so discriminating. In *Trenton v. New Jersey*, 262 U.S. 182 (1923), the Court found the governmental/proprietary dichotomy to be relevant in certain areas of the law (e.g., the law of torts), but not in the context of pure state/municipality interactions, such as the case now before us.

This seemingly dictatorial authority which the state may exercise against its subdivisions is not without limitation. The state may not employ its power to establish, destroy or reorganize its political subdivisions to camouflage a strategy designed to deprive certain of the citizenry of the subdivisions of their individual constitutional rights. *See,* for example, *Gomillion v. Lightfoot,* 364 U.S. 339 (1960). In such a case, the affected citizens may clearly challenge the legality of the state/municipality interaction.

---

3. *Hunter v. Pittsburgh*, 207 U.S. 161 (1907).

558

The state action here is not of the genre which has been justifiably denounced in *Gomillion* and similar cases. DER's orders were exactly what they purport to be, namely, bona fide efforts to further the policy set forth in The Clean Streams Law. No hidden purpose appears, nor would an unconstitutional result obtain from strict enforcement of the DER orders.

Accordingly, we enter the following

## ORDER

Now, April 28, 1975, the order of the Environmental Hearing Board, dated October 7, 1974, is hereby affirmed, and appellants are directed to comply with the May 16, 1973, orders directed to them by the Department of Environmental Resources.