WILLIAMSPORT FIREMEN PENSION
BOARDS I AND II, Plaintiffs,

v.

E.F. HUTTON & COMPANY, INC. and
Peyton McDonald, Defendants.

Civ. No. 83–0487.

United States District Court,
M.D. Pennsylvania.

June 13, 1983.

John Bonner, Williamsport, Pa., for plaintiffs.

Henry Fitzpatrick, Jr., Philadelphia, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Plaintiffs Williamsport Firemen Pension Boards I and II (Pension Boards) filed this action against Defendants E.F. Hutton & Company, Inc. (E.F. Hutton) and Peyton McDonald on April 15, 1983. Jurisdiction of this Court is alleged to be conferred by federal securities law and by the diversity of citizenship of the parties. *See* Complaint ¶ 9. However, there is no diversity of citizenship jurisdiction in this case since both the Plaintiff Pension Boards and Defendant McDonald are Pennsylvania "citizens". *E.g. American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); 28 U.S.C. § 1332.

According to the complaint, the Plaintiffs are pension boards organized under the laws of the Commonwealth of Pennsylvania and the ordinances of the City of Williamsport. E.F. Hutton is a corporation organized under the laws of the State of Delaware with a local office in Williamsport. McDonald is the vice-president and manager of E.F. Hutton's Williamsport office.

The Pension Boards allege both federal causes of action and pendent state law claims. Count I of the complaint alleges that the Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)(5) promulgated thereunder, 17 C.F.R. § 240.10(b)(5). In particular, Count I charges that Defendants McDonald made certain misrepresentations to the Plaintiff Pension Boards concerning the amount of and method of calculating E.F. Hutton's commissions on stock transactions. The Defendants are alleged to have defrauded the Plaintiff Pension Boards out of approximately $28,000 in excess commission charges.

In Count II of the complaint, Plaintiff Pension Boards allege that the Defendants engaged in purposeful excessive trading known as "churning", also in violation of Section 10(b) and Rule 10(b)(5). *E.g. Powers v. Francis I. DuPont and Company,* 344 F.Supp. 429, 431 (E.D.Pa.1972). In particular, the Pension Boards allege that between January of 1977 and August of 1982 the Defendants acted as broker for 166 transactions in the Pension Boards' stock portfolio and earned approximately $38,000 in commissions therefor.

Counts III through VIII allege Pennsylvania state law causes of action. In Count III, the Pension Boards allege that as a result of the Defendants' gross and reckless conduct, they are liable to the Pension Boards for punitive damages. While Plaintiffs do not state with specificity whether

Count III is brought under state or federal law, no punitive damages can be recovered under the Securities Exchange Act of 1934. *Byrnes v. Faulkner, Dawkins, and Sullivan,* 550 F.2d 1303 (2d Cir.1977). Count IV alleges that the conduct of the Defendants is in violation of the Pennsylvania Securities Act of 1972, 70 Pa.Stat. § 1–401 *et seq.* (1972). Count V alleges causes of action for fraud and deceit under the common law. Count VI alleges a cause of action for negligence. E.F. Hutton is alleged both to be directly negligent and to be vicariously liable for the negligence of McDonald. Count VII alleges a cause of action for the Defendants' breach of fiduciary duties owed to the Plaintiff Pension Boards. Count VIII alleges a cause of action for breach of the contractual agreement between the Pension Boards and the Defendants respecting the management of the Plaintiffs' accounts. The Pension Boards seek compensatory and punitive damages as well as attorney's fees and costs.

By order of April 15, 1983, this case was placed on the Court's Williamsport June 1984 trial list.

II. Defendants' Motion to Dismiss.

On May 4, 1983, Defendants McDonald and E.F. Hutton filed a motion to dismiss the complaint and a supporting brief. The motion was opposed by the Pension Boards on May 20, 1983 and a reply brief was filed on June 2, 1983. Annexed to the reply brief is the affidavit of Peyton McDonald. The matter is now ripe for decision.

In their motion to dismiss, Defendants McDonald and E.F. Hutton make the following arguments: first, that the Plaintiff Pension Boards lack the capacity to sue; second, that Counts I and II fail to state a claim; and third, that in the event that Counts I and II are dismissed, this Court lacks jurisdiction over the state law claims contained in Counts III through VIII. These arguments will be addressed *seriatim.*

A. Capacity of Pension Board to Bring Suit.

Plaintiffs are identified in the complaint as Pension Boards organized and existing under the laws of the Commonwealth of Pennsylvania and the ordinances of the City of Williamsport. With respect to entities other than individuals and corporations, the capacity of such entities to sue or be sued is determined by the law of the state in which the district court involved is sitting. F.R.Civ.P. 17(b). Thus, Pennsylvania law controls the question. Defendants contend that Firemen Pension Boards such as the Plaintiff Pension Boards do not under Pennsylvania law have the capacity to maintain an action.

Under Pennsylvania law, in order to maintain a suit, a Plaintiff must have an actual or legal existence. "The Plaintiff ... must be an entity which the law recognizes." *Philadelphia Facilities Management Corp. v. Biester,* 60 Pa.Commw.Ct. 366, 431 A.2d 1123, 1127 (1981), *citing Thompson v. Peck,* 320 Pa. 27, 181 A. 597 (1935); *McConnell v. Apollo Savings Bank,* 146 Pa. 79, 23 A. 347 (1892). The pension funds at issue in this lawsuit over which the Plaintiff Pension Boards have control are clearly entities "which the law recognizes." 53 Pa.Stat. § 39320 directs that cities shall "establish, by ordinance, a firemen's pension fund, to be maintained in part by an equal and proportionate monthly charge against each member of the fire department ..." Section 39320 further provides that "All pension funds established under the provisions of this section shall be under the direction and control of a Board of Managers consisting of the mayor, the director of accounts and finance, [and] the director of the department having charge of the fire department...."

Neither the parties nor the undersigned have discovered any case directly addressing the question whether the Pension Boards, as distinguished from the pension funds, are entities "which the law recognizes." However, Section 39320 clearly establishes both the existence of a firemen's pension fund and a Board of Managers to direct and control the fund. The Plaintiff Pension Boards are legal entities "which the law recognizes."

Even were it the case that the Pension Boards were not proper plaintiffs, this action would not be dismissed on that basis. There is no doubt that there exist some entities, be they the Pension Boards, the pension funds themselves, or the members of the Pension Boards on behalf of the pension funds, who are the real parties in interest in this lawsuit. Rule 17(a) of the Federal Rules of Civil Procedure provides that, while every action must be prosecuted in the name of the real party in interest, "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

For all of the foregoing reasons, this Court concludes that this action should not be dismissed based upon the Defendants' assertion that the Pension Boards do not have the capacity to sue.

### B. Count I—Misrepresentation.

Count I alleges that Defendant McDonald made certain misrepresentations to the Pension Boards regarding the method of calculating the commissions payable to E.F. Hutton on the stock transactions. The Defendants contend that any statements made by McDonald regarding the commissions cannot be statements made "in connection with the purchase or sale of any security," and do not state a cause of action under federal securities law.

Count I is based on Rule 10(b)(5) promulgated by the Securities and Exchange Commission in order to implement Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j. Rule 10(b)(5) provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange (a) To employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale of any security.* (Emphasis added.)

It is the law of this Circuit that, to set forth a claim under Rule 10(b)(5), "[f]irst, there must be misrepresentation or fraud; second, a purchase or sale of a security must occur; and third, such misrepresentation or fraud must have been rendered *'in connection with'* the purchase or sale of a security." *Ketchum v. Green,* 557 F.2d 1022, 1025 (3d Cir.1977). While the Defendants concede that the complaint satisfies the first and second elements of stating a claim, the Defendants vigorously argue that any misrepresentation or fraud "was not in connection with" the purchase or sale of a security. This Court agrees.

The leading case dealing with the "in connection with" language of Rule 10(b)(5) is *Superintendent of Life Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The Supreme Court in *Bankers Life* declared that in order to state a claim under Rule 10(b)(5), a party must be defrauded "as a result of deceptive practices touching its sale [or purchase] of securities ..." 404 U.S. at 12–13, 92 S.Ct. at 169. The Court further directed that the language of Rule 10(b)(5) "must be read flexibly, not technically and restrictively." *Bankers Life,* 404 U.S. at 12, 92 S.Ct. at 169.

As the Court of Appeals of this Circuit noted in *Ketchum,* the courts of other circuits "have found compliance with the 'connection' requirement even where fraudulent conduct is implicated only tangentially in a securities transaction." 557 F.2d at 1026, *citing Jannes v. Microwave Communications, Inc.,* 461 F.2d 525, 529 (7th Cir.1972); *Drachman v. Harvey,* 453 F.2d 722, 736–38

(2d Cir.1972) (en banc). The Court of Appeals of this Circuit has rejected such a broad interpretation of the language of *Bankers Life* and has concluded that the "in connection with" clause of Rule 10(b)(5) must be viewed as "contemplat[ing] a *causal connection* between the alleged fraud and the purchase or sale of stock." *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3d Cir.1976) (emphasis added). *See Ketchum v. Green,* 557 F.2d at 1028–29.

Applying the "causal connection" rule set forth in *Tully* and *Ketchum,* this Court concludes that the allegedly improper conduct at issue in Count I of the complaint is not "in connection with" the purchase or sale of securities within the meaning of Section 10(b) and Rule 10(b)(5). The allegations of misrepresentation or fraud with respect to the commissions to be earned by the Defendants are set forth in Paragraphs 15–22 of the Complaint. These allegations of fraud relating to the commissions earned by E.F. Hutton have no causal connection to the purchase by the Pension Boards of any particular securities. The alleged fraud involves only the general relationship between the Defendants and the Pension Boards. It does not relate to fraud in connection with the purchase or sale of any particular security or securities.

There being no "causal connection" between the alleged fraud set forth in Count I of the Complaint and the purchase or sale of any security or securities, Count I of the Complaint will be dismissed.

### C. Count II—Churning.

Count II of the complaint alleges generally that the Defendants violated Section 10(b) and Rule 10(b)(5) by engaging in excessive trading known as "churning." "Churning" of a securities account "occurs when a dealer, acting in his own interest and against those of his customers, induces transactions in the customers' account which are excessive in size and frequency in light of the character of the account." *Powers v. Francis I. DuPont & Company,* 344 F.Supp. 429, 431 (E.D.Pa.1972). An essential element of a claim of "churning" is

that the broker must have the authority to exercise complete discretion over the activity in the account. *Powers v. Francis I. DuPont and Company,* 344 F.Supp. 429 (E.D.Pa.1972). The Defendants contend that since the account was "non-discretionary" in that the Pension Boards had to approve of all purchases, the Defendants could not have engaged in churning. This Court disagrees. The requisite degree of control by the brokers may be supplied even if the account is "non-discretionary":

> Between the purely non-discretionary account and the purely discretionary account there is a hybrid-type account. . . . Such an account is one in which the broker has usurped actual control over a technically non-discretionary account. In such cases, the Courts have held that the broker owes his customer the same fiduciary duties as he would have had the account been discretionary from the moment of its creation. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951, 954 (E.D.Mich. 1978).

Indeed, even if there is a purely non-discretionary account, where the client routinely follows the recommendations of the broker, the requisite degree of control by the broker can be established to set forth a claim of churning. *E.g. Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814 (9th Cir. 1980). *See Zaretsky v. E.F. Hutton & Co., Inc.,* 509 F.Supp. 68, 74 (S.D.N.Y.1981) (factors relevant to the element of control include the discretion given to the broker-dealer, the age, education, intelligence, and business and investor experience of the client, the relationship between the client and broker, and the reliance placed by the customer on his broker.)

Despite the requirement of Rule 9(b) of the Federal Rules of Civil Procedure that allegations of fraud must be pled with specificity, the Pension Boards have failed to set forth any facts supporting their conclusory allegation that the Defendants had control over the brokerage account. Indeed, the only allegations in the complaint point to a contrary conclusion. Paragraph 21 of the

Complaint states that "from January 1977 to August 1982, the Defendants recommended and Plaintiffs accepted approximately 166 investment transactions from which the Defendants charged and received approximately $38,000.00 in commissions." The fact that the Defendants recommended and the Pension Boards accepted these transactions would strongly suggest that the Pension Boards and not the Defendants were in actual control of the brokerage accounts. This Court concludes that the Pension Boards have failed to plead or otherwise establish that they relinquished control of the brokerage accounts to the Defendants. As such, a claim for "churning" has not been stated.

■ Even were it the case that the complaint adequately pleaded the relinquishment by the Pension Boards to the Defendants of control over the brokerage accounts, a cause of action for "churning" under Section 10(b) and Rule 10(b)(5) would likely not be stated. The factual statements supporting the allegations of churning are found at Paragraph 21 of the Complaint wherein the Pension Boards contend that during the five year and eight month period from January of 1977 through August of 1982 there were 166 transactions in the brokerage accounts and the Defendants earned "approximately $38,000 in commissions" as a result of those transactions. The Pension Boards aver that as of September 30, 1982, the brokerage accounts had a cost basis of $1,118,745.17 and a current value of $992,851.71.

In evaluating the size of the Pension Board's brokerage accounts, the number of years involved, the total number of transactions, and the total commissions earned, this Court does not view the complaint to state a claim of churning. In particular, on the average, there were approximately 30 transactions per year for a total of approximately $6,700 in commissions earned per year. Stated simply, the number of transactions and commissions earned were not unreasonable or excessive. *See Carroll v. Bear, Stearns and Co.,* 416 F.Supp. 998 (S.D. N.Y.1976) (complete turn-over of $900,000

stock portfolio in less than six months generating $9,000 in commissions and $3,000 in advisory fees during that period does not state a cause of action for churning). *Compare Fey v. Walston and Company, Inc.,* 493 F.2d 1036 (7th Cir.1974) (churning found where account turned over 13 times in 26 months); *Hecht v. Harris, Upham and Company,* 430 F.2d 1202 (9th Cir.1970) (churning found where 10,000 trades with a gross dollar volume of $100,000,000 consummated for an account worth $533,000 and the broker earned $189,000 in commissions); *Moscarelli v. Stamm,* 288 F.Supp. 453 (S.D. N.Y.1968) (churning found where account turned over 12 times each month for four consecutive months and one particular security was purchased 15 times and sold 12 times). The cases in which churning was found stand in stark contrast to the allegations in the complaint. In sum, engaging in transactions resulting in $6700.00 per year in commissions for the management and investment of an account of approximately $1,000,000 does not constitute "churning."

■ Finally, the Pension Boards alleged in Count II that the stock purchases recommended by the Defendants were speculative and unsuitable for the investment purposes of the Pension Boards. There is, however, no allegation concerning any specific stock transaction. For this reason and for the additional reason that the Pension Boards approved of all stock transactions, there is no claim stated for speculative or unsuitable trading. *E.g. Fein v. Shearson Hayden Stone, Inc.,* 461 F.Supp. 137 (S.D.N.Y.1978); *Salwen Paper Co. v. Merrill Lynch,* 79 F.R.D. 130 (S.D.N.Y.1978); *Todd v. Oppenheimer and Company,* 78 F.R.D. 415 (S.D.N.Y.1978). *See* F.R.Civ.P. 9(b).

For all of the foregoing reasons, Count II of the complaint fails to state a claim and will be dismissed.

D. State Law Claims.

This Court today decides that there is no federal claim stated in Counts I and II of the Complaint and that there is no diversity of citizenship jurisdiction over the case. There being no valid basis for asserting

jurisdiction of this Court, the pendent state law causes of action, stated in Counts III through VIII of the complaint must be dismissed. *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976).

For all of the foregoing reasons, the motion to dismiss the complaint will be granted.

An appropriate order will be entered.