**Laura ANGELASTRO, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**PRUDENTIAL–BACHE SECURITIES, INC., and Bache Halsey Stuart Shields, Inc., Defendants.**

Civ. A. No. 83–1270.

United States District Court, D. New Jersey.

Dec. 7, 1983.

Alan Fellheimer, Fellheimer, Eichen & Goodman, Westmont, N.J., Richard D. Greenfield, Robert P. Frutkin, David B. Zlotnick, Greenfield & Chimicles, Bala Cynwyd, Pa., for plaintiff.

Philip S. Fuoco, Haddonfield, N.J., Leonard Barrack, Daniel E. Bacine, Barrack, Rodos & Bacine, Philadelphia, Pa., for defendants.

## OPINION

GERRY, District Judge.

The plaintiff is seeking to maintain this suit, in which violations of federal securities laws are alleged, as a class action. The parties have agreed, however, to put off the plaintiff's motion for class certification until after the court has reached a decision on the motion to dismiss.

The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and Rules 10b–5 and 10b–16 promulgated thereunder, the "purpose and effect of these violations to induce plaintiff and other class members to purchase various securities through Bache and to make such purchases for excessive consideration." Specifically, paragraph 16 of the complaint charges that the defendants *inter alia*: failed to fully and accurately disclose to their margin customers the interest rates that would be charged on margin accounts in connection with the purchase of securities; failed to disclose the formula by which interest rates would be assessed; failed to disclose that increases in the market value of underlying securities in connection with which credit was extended would not be considered in determining the extent of credit or in calculating interest charges to be assessed against margin accounts; failed to disclose that interest rates on margin accounts were variable, and that alternate and lower interest rates were available; and failed to adequately train and supervise their employees to insure that information on credit terms was fully disseminated. As a consequence of these nondisclosures, the plaintiff claims that the investing public has been misled, that securities were purchased for excessive consideration, and that investors were unable to ascertain what they were actually paying for securities purchased in connection with the margin accounts.

The defendants claim that the allegations, taken as true, do not state a cause of action under 10b–5 or 10b–16 (the latter Rule, it is claimed, affords no private right of action). Further, it is argued, the claim should be dismissed for failing to plead fraud with the specificity required by F.R. Civ.P. 9. Finally, the defendants argue

that if its above contentions are rejected, it is entitled to a more definite statement than is provided by the plaintiff's pleadings.

LEGAL ARGUMENT.

1. *Rule 10b–5.* The Rule prohibits the making of untrue statements or omissions, or employing any scheme to defraud "in connection with the purchase or sale of any security." The defendants first argue that their conduct with respect to margin accounts is not actionable under 10b–5 because it lacks the necessary "connection with the purchase or sale of any security."

■ At the outset, it must be noted that the margin accounts themselves are not "securities" within the meaning of 10b–5. *See Salcer v. Merrill Lynch,* 682 F.2d 459 (3d Cir.1982); *Wasnowic v. Chicago Board of Trade,* 352 F.Supp. 1066 (M.D.Pa.1972), *aff'd,* 491 F.2d 752. Nor are loans of money, which resemble margin accounts, ordinarily treated as securities. *See Ripso v. Spring Lake Mews,* 485 F.Supp. 462 (E.D. Pa.1980); *Provident Nat'l Bank v. Frankford Trust Co.,* 468 F.Supp. 448 (E.D.Pa. 1979). Therefore, if defendants are to be held liable under 10b–5, it must be because their operation of margin accounts is "in connection with the purchase or sale of any security." None of the cases the parties have submitted for the court's edification squarely address the question of whether non-disclosure of the interest rates on margin accounts is actionable under 10b–5.

The plaintiff has brought to our attention several cases in which the transfer of stock as security for a loan was treated as a sale of securities. *See Alley v. Miramon,* 614 F.2d 1372, 1375 (5th Cir.1980); *Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *United States v. Kendrick,* 692 F.2d 1262, Fed.Sec.L.Rep. (CCH) ¶ 99,004 (9th Cir.1982). These cases do not appear to be apposite, since the fraud regarding the loans directly induced the transfer. Here, there is nothing in the complaint to suggest that the plaintiff bought or sold securities *because of* anything the defendants failed to disclose concerning the margin accounts. In the case of *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.1980), the alleged losses were in the purchase of specific stocks concerning which representations were made. Such is not the case here. Nor are the cases of *Cramer v. General Telephone & Electronic Corp.,* 582 F.2d 259 (3d Cir. 1978) or *United States v. Read,* 658 F.2d 1225 (7th Cir.1981), on point since both those cases involved fraud in the sale of particular securities, in the *Cramer* case, the security consisting of an ownership interest in a company. Of greater relevance are the *Arrington* and *Mihara* cases, both from the Ninth Circuit. In *Arrington v. Merrill Lynch,* 651 F.2d 615 (9th Cir.1981), the defendants misrepresented the risks of purchasing stocks on margin in a declining market *and* the merits of various securities transacted in. The difference between *Arrington* and the instant case is narrower than the difference in the earlier cited cases. Nevertheless, there *is* a difference between misrepresentations concerning the credit terms of margin accounts and misrepresentations concerning the nature of trading on margin in a particular economic climate. The latter misrepresentations strike us as more closely related to the purchase or sale of securities. *Mihara v. Dean Witter,* 619 F.2d 814 (9th Cir.1980), involved the practice of "churning," in which a broker, in order to earn commissions, makes more transactions for a client than are necessary or desirable. The case is like the present one in that there are no misrepresentations regarding any particular securities, but misrepresentations regarding a general brokerage practice. But we do not read the case, as plaintiff does, to stand for the broad proposition that "a broker's activities are *of necessity* connected with the purchase and sale of securities." Finally, the *Steinberg v. Shearson* case, 546 F.Supp. 699 (1982, D.Del.), factually identical to the present one, assumes that margin account credit misinformation is cognizable under 10b–5, but that assumption is not explained. The case is not, therefore, entitled to much weight.

Turning to the defendants' cases, again we find nothing quite on point, although the factual settings are somewhat more comparable to those presented here. *Wilson v. First Houston Investment Corp.*, 566 F.2d 1235 (5th Cir.1978), was a case in which fraudulent statements were made by a firm about its investment management techniques. Such statements were deemed not sufficiently "in connection with" the purchase or sale of securities as to be covered by 10b–5. This case is somewhat persuasive because margin accounts have more to do with the management of portfolios than they do with the underlying securities themselves. In *Drasner v. Thomson McKinnon Securities*, 433 F.Supp. 485 (S.D.N.Y.1977), the court stated:

> The only effect of margin was to provide a deposit as security to the broker who was acting as plaintiffs' agent to effect a contract between plaintiffs and third parties .... It had no financial connection with plaintiffs' gains or losses which were solely in conjunction with the price movements of the underlying stock.

This case, from within the Second Circuit, is the closest case we have found, but it would appear that, at least in part, the court's decision was affected by its finding that the sophisticated plaintiffs could not claim they were deceived. Finally, in *Pension Boards v. E.F. Hutton*, 567 F.Supp. 140, Fed.Sec.L.Rep. (CCH) ¶ 99,268 (M.D. Pa.1983), the court ruled that misrepresentations concerning the method of calculating commissions on stock transactions were not covered by 10b–5. This case is relevant because, like the present one, it involves the cost of transacting in securities, rather than the cost or merits of the securities themselves.

It would appear that the circuits differ somewhat in how broadly they read the "in connection with" language of 10b–5. The Seventh Circuit and the Second Circuit apparently are satisfied that 10b–5 applies "even where fraudulent conduct is implicated only tangentially in a securities transaction." *Ketchum v. Green*, 557 F.2d 1022, 1026 (3d Cir.1977), *interpreting Jannes v.*

*Microwave Communications*, 461 F.2d 525 (7th Cir.1972); *Drachman v. Harvey*, 453 F.2d 722 (2d Cir.1972); *Goldberg v. National Bank of N.A.*, Fed.Sec.L.Rep. (CCH) ¶ 99,555 (S.D.N.Y.1970). *But see Drasner, supra.* Apparently, the Third Circuit has defined "in connection with" somewhat more narrowly. *Ketchum v. Green* and *Tully v. Mott Supermarkets*, 540 F.2d 187 (3d Cir.1976), view the "in connection with" concept as roughly equivalent to proximate causation. That is, a misrepresentation is "in connection with" the purchase or sale of a security if there is a "causal *connection* between the alleged fraud and the purchase or sale of stock." *Id.* at 194. Based on this construction of 10b–5, we hold that the alleged misrepresentations concerning interest rates on margin accounts are not the type of misrepresentations that are actionable under 10b–5.

In this case, there are no allegations that the defendants made any misrepresentations about any particular securities, or that the costs of securities differed depending on whether one bought or sold on margin or by another means. Nor does the complaint suggest that *because* the plaintiff had a margin account, any particular securities were bought or sold. We agree with the court in *Drasner, supra,* that margin accounts are nothing more than a form of credit, and that the margin accounts are best treated as distinct from the underlying stock transactions. If we were to hold that brokerage firms were liable under 10b–5 for margin violations, it would logically follow that other lending institutions which made credit available for use in stock market transactions could also be liable under 10b–5 on their misrepresentations. Contrary to the court in *Goldberg, supra,* this, we believe, stretches 10b–5 further than it ought to be stretched. With the court in *Pension Boards, supra,* we believe that 10b–5 is primarily a protection against fraud concerning the merits of particular securities, not against every practice brokerage firms engage in, especially where a given practice is of a type not unique to brokerage firms but may also

occur outside the stock market. Accordingly, we will dismiss the plaintiff's claims under 10b–5.

2. *Rule 10b–16.* The defendants next claim that the complaint fails to allege a violation of 10b–16, and they further raise the questions of whether 10b–16 even affords a private right of relief.

■ Rule 10b–16 provides that it is unlawful for a broker to extend credit unless it establishes procedures to assure that each customer, *at the time an account is opened,* is sent a written statement disclosing: the conditions under which interest will be charged; the rates of interest to be charged; the method of calculating interest; the conditions under which interest rates will be changed; and several other factors concerning the extension of credit. Further, the Rule provides that the customer receive at least quarterly statements informing him of the status of his account, and that the broker give the customer 30 days' notice before changing the conditions under which credit is extended. The defendants are correct that some of the allegations in the complaint do not state violations of 10b–16. The Rule does not require a new disclosure prior to each purchase of securities, only prior to the opening of an account. Accordingly, paragraph 16(a) of the complaint will be dismissed. Nor does the Rule require that the broker inform customers of the existence of alternate and lower rates of interest which may be available, but only what its rates of interest on margin accounts are. Accordingly, the part of paragraph 16(e) which alleges this violation will be dismissed. The remainder of the allegations in paragraph 16 of the complaint, read in a light favorable to the plaintiff, may possibly state claims under Rule 10b–16. We must determine, therefore, whether to allow a private cause of action under the Rule.

The court is aware of four cases dealing with the question, none within this circuit. Two cases imply a cause of action, and two refuse to do so. *Liang v. Dean Witter & Co.,* 540 F.2d 1107 (D.C.Cir.1976), states in a footnote: "It may safely be assumed that non-compliance with Rule 10b–16 provides the basis for a private cause of action. It is already established that a violation of 10b–5, a rule of disclosure analogous to Rule 10b–16, implies a civil remedy .... Our recognition here accords with the view that private enforcement of commission rules may provide a necessary supplement to commission action." *Id.* at 1113 n. 25. The court in *Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303 (E.D.Va.1981), applying the *Cort v. Ash* test, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), found that Congress intended to create a private remedy. Reasoning that the Truth in Lending Act provided a private remedy, that brokers were specifically exempted from the Act because Congress assumed the Securities and Exchange Commission (SEC) would similarly regulate brokers, and that 10b–16 represents the SEC's effort at regulation, the court concluded that Congress wanted a private cause of action under 10b–16. The *Haynes* court further held that in view of the Rule's plain language and the analogous requirements of the Truth in Lending Act, scienter was not a necessary element of a 10b–16 claim. This court finds the reasoning of *Liang* and *Haynes* more persuasive than that in the cases to the contrary, *Furer v. Paine, Webber,* (CCH) Fed.Sec.L.Rep. ¶ 98,701 (C.D.Cal.1982) and *Establissement Tomis v. Shearson,* 459 F.Supp. 1355 (S.D.N.Y.1978). The *Tomis* case merely states that no case prior to it had squarely held a private cause of action to exist, while the *Furer* case found the legislative history surrounding the Truth in Lending Act ambiguous. Accordingly, we will not dismiss the complaint as to Rule 10b–16.

Finally, the defendants urge that we dismiss the case as failing to plead fraud with the specificity required by Rule 9 of the Federal Rules of Civil Procedure. But essentially what the plaintiff here complains of are omissions, non-disclosures. We regard the complaint as sufficiently specific in stating what should have been disclosed which was allegedly not, in fact, disclosed.

Moreover, the complaint sufficiently alerts the defendants of its alleged violation of Rule 10b–16 so that there is no need for a more definite statement under Rule 12(e). We do not see why the defendants would be unable to respond to the complaint, since all that seems to be required by way of response is for the defendants to submit the written information it sent to margin customers and show how that information meets the requirements of 10b–16, if it does. Accordingly, we will allow the plaintiff to proceed on her 10b–16 claim and will deny the motion for a more definite statement. The accompanying order will be entered.